## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL BILLINGS, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 16-778** |
| **PORTNOFF LAW ASSOCIATES, LTD.** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                                    **JUNE 10, 2016**

Bankruptcy creditors awaiting the end of their debtors' bankruptcies cannot move forward on their claims absent relief from the debtors' automatic stay. Postponing scheduled state court sheriffs sales stayed by the Bankruptcy Code, consistent with well-established authority since 1999, does not violate the automatic stay. The law is clear. Debtors' present appeal of Chief Judge Frank's Order upholding this fundamental principle by dismissing an adversary complaint lacks merit. We accordingly affirm Chief Judge Frank's dismissal of the adversary action in the accompanying Order.

### I.   Undisputed Facts

Appellants Michael Billings and Kathleen Billings ("Billings") own real property subject to a municipal lien imposed West Bradford Township filed by the Township lawyers, Appellee Portnoff Law Associates, Ltd. ("Portnoff"). Portnoff filed the municipal lien for unpaid sewer, trash, and hydrant fees owed to the Township and obtained a default judgment. The Township filed a writ of execution and listed Billings' property for a sheriff's sale in April 2014. On April 11, 2014, shortly before the sheriff's sale, Billings filed a Chapter 13 bankruptcy petition. Portnoff orally postponed the scheduled sheriff's sale to August 2014 to comply with the Bankruptcy Code's automatic stay provision.[1]

On August 20, 2014, Portnoff moved the Chester County Court of Common Pleas to continue the sheriff's sale. Portnoff did not seek relief from the automatic stay before filing the motion. In October 2014, January 2015, April 2015, and September 2015, Portnoff filed similar motions to continue scheduled sheriff's sales. Otherwise, the sheriff's sales would violate the automatic stay. The state court granted all of Portnoff's motions to continue the sheriff's sales. In granting each motion, the state court ordered Portnoff need not re-advertise the sheriff's sale and thus did not increase costs to be recovered at sheriff's sale.

On October 22, 2015, Billings filed a class action adversary complaint against Portnoff claiming its continuance motions violated the automatic stay because filing motions required judicial action and burdened Billings with "repeated relisting of the sheriff's sale and attendant legal fees."[2] Billings argues Portnoff altered the *status quo* and violated the automatic stay. Billings, in Count II, fashioned the same allegation on behalf of a class.

Portnoff moved to dismiss the adversary complaint and on February 5, 2016, Chief United States Bankruptcy Judge Frank dismissed the adversary complaint.[3] Chief Judge Frank found Portnoff's motions to continue the sheriff's sale did not violate the automatic stay because they only served to maintain the *status quo* of the foreclosure proceeding, which accords with the purpose of the bankruptcy code's automatic stay.[4]

## II. Analysis

Billings appeal the February 5, 2016 Order dismissing their adversary proceeding arguing Chief Judge Frank erred in finding Portnoff's continuance motions did not violate the automatic stay.[5] Under our standard of review, we disagree and affirm the bankruptcy court's decision.[6]

The bankruptcy court held Portnoff's continuance motions comply with established authority of our Court of Appeals in *Taylor v. Slick*.[7] In *Taylor*, the creditor obtained a default judgment against the debtor in a foreclosure action, filed a writ of execution and scheduled a

2

sheriff's sale for September 5, 1995.[8] The debtor filed for Chapter 11 bankruptcy protection on September 1, 1995.[9]    The creditor orally postponed the sheriff's sale until October 23, 1995 under Pennsylvania Rule of Civil Procedure 3129.3(b).[10]    The creditor then obtained relief from the automatic stay in the bankruptcy court and sold the property.[11]

The debtor filed an adversary complaint alleging the creditor's postponement of the sheriff's sale violated the automatic stay.[12]    The bankruptcy court dismissed the adversary complaint, the district court affirmed, and the debtor appealed. Our Court of Appeals framed the question as "whether a continuation of a sheriff's sale serves to maintain the *status quo* between the debtor and his creditors or whether it constitutes 'a judicial, administrative, or other action or proceeding' prohibited by § 362(a)(1)."[13]    Our Court of Appeals first differentiated between the meaning of "continuation" as used in § 362, and "continuation" in reference to postponing a sheriff's sale:

> According to the principle of *noscitur a sociis,* the word "continuation," as used in § 362(a)(1), must be read in conjunction with other words that surround it, such as "commencement." Upon such examination, it becomes apparent that the filing of a bankruptcy petition prohibits the beginning ("commencement") of a judicial proceeding and the carrying forward ("continuation") of a proceeding that has already begun.

> The "continuation" of a sheriff's sale, on the other hand, connotes the postponement of a proceeding, and effectuates the purposes of § 362(a)(1) by preserving the status quo until the bankruptcy process is completed or until the creditor obtains relief from the automatic stay.[14]

Deciding the issue of first impression, our Court of Appeals held over sixteen years ago, "the continuance of a sheriff's sale in accordance with state law procedure during the pendency of an automatic stay does not violate § 362(a)."[15]  The continuance did not "prejudice [debtor] or otherwise alter[] his position with respect to the property."[16]  Simply rescheduling the sheriff's sale did not afford the creditor any advantage, nor does it allow for the sheriff's sale to happen at

3

all during the pendency of the bankruptcy without obtaining relief.[17]  Rather, it maintains the *status quo* and "avoid[s] duplicative foreclosure costs that would eventually be deducted from the proceeds of the sale (to the disadvantage of the debtor)."[18]

Chief Judge Frank correctly applied the well-established *Taylor* reasoning to Portnoff's continuance motions.[19]  As in *Taylor*, the court observed the motions and the state court's granting of the motions, "simply maintained the status quo in the foreclosure action [.]"[20]

Chief Judge Frank thoroughly addressed Billings' arguments and easily parried their attempts to distinguish *Taylor*.[21]  First, Billings argued *Taylor* is limited to oral postponements under Pa. R. Civ. P. 3129.3(b).[22]  But the bankruptcy court dismissed this argument citing a 2012 bankruptcy court opinion in *In re Angulo*.[23]  In *Angulo*, the debtor similarly attempted to distinguish *Taylor* but the court found the proper focus under *Taylor* is whether the creditor's actions altered the *status quo*.[24]  We agree the proper focus is on the relationship of the parties to the foreclosure proceeding.  Portnoff's client gained no advantage and the continuances did not prejudice Billings.[25]  Our Court of Appeals in *Taylor* does not limit its holding to oral postponements.  While the defendant in *Taylor* utilized the notice procedure detailed in Pa. R. Civ. P. 3129.3(b), the court's holding broadly focused on the effect of the postponement rather than the procedural vehicle used to obtain the postponement.[26]  The court of appeals determined a continuation of the sheriff's sale did not constitute a "judicial, administrative, or other action or proceeding" if done in accordance with state law.[27]  Billings do not dispute Portnoof obtained continuances in accord with state law.  *Taylor*, precedent in this Circuit for over 16 years, renders Billings' argument meritless.  While granting the motions amounted to a "judicial act" in a non-bankruptcy forum, the act did nothing to "carry[ ] forward" the foreclosure proceeding.[28]

4

The continuances ensured the parties remained in the same position throughout Billings' bankruptcy.

Billings' cite to *Maritime Elec. Co. v. United Jersey Bank*[29] makes pellucidly clear they fail to see the difference between the uses of "continuation" delineated in *Taylor*. They argue "[t]he Bankruptcy Court essentially carved out an exception to *Maritime* and allowed a 'non-bankruptcy court's authority to continue judicial proceedings then pending against the debtor' without obtaining relief from stay under 11 U.S.C. § 362(d)."[30] But, as Billings concede, *Maritime* does not conflict with *Taylor* and we find *Maritime* does not militate a different result.

*Maritime* is an example of "carrying forward" a case despite a bankruptcy petition. The district court entered judgment on claims against the debtor over a month post-petition. The court of appeals found the judgment void *ab initio* because the "district court had no authority to *continue* the proceedings" against the debtor.[31] But "continuation" as used in § 362 means the "carrying forward" of a case.[32] In *Maritime*, the court continued (or "carr[ied] forward") the case against the debtor, as it entered final judgment in violation of the automatic stay.[33] "The 'continuation' of a sheriff's sale, on the other hand, connotes postponement of a proceeding [.]"[34] Thus, while the district court in *Maritime* "carr[ied] forward" the case against the debtor, the state court here did nothing of the sort. Instead, the state court continued the sheriff's sale. Billings argue *Maritime* prohibits all "judicial action". *Maritime* only prohibits the "commencement or continuation" of judicial actions and proceedings against the debtor.[35]

Billings also argued "Portnoff's filing of multiple motions prejudices them because of the expected imposition of legal expenses."[36] They argued both the legal expenses incurred by Portnoff in filing the motions and the legal expenses possibly incurred in opposing the motions altered the *status quo*. But as the bankruptcy court found, the creditor incurs legal expenses "any

5

time the creditor follows the state court rules that authorize postponement [.]"[37]    If Portnoff had

orally postponed the sheriff's sales, it would have incurred billable time appearing at the sheriff's

sale, filing a notice with the prothonotary, filing a certificate with the sheriff, and re-noticing the

sale.[38] As for Billings' possible legal expenses, common sense dictates it would be

counterproductive for them to ever oppose a motion to continue the sheriff's sale.[39]  If they were

to oppose the motion, why would they not also oppose an oral postponement?  It is in their

interest to continue the sale, as cancelling the sale altogether could prove even more financially

burdensome.[40]   Regardless of the costs associated with continuing the sheriff's sale, the fact

remains *Taylor* was not concerned with this issue because the postponement ultimately fulfilled

the purpose of the automatic stay.[41]

The policy concerns raised in Billings' reply do not persuade us to ignore precedent from

our Court of Appeals. Billings contend debtors will be "socked with staggering legal fees" if

creditors are allowed to file motions to continue sheriff's sales.[42]  But as the bankruptcy court

observed, and we agree, they have not shown how filing a boilerplate motion is more costly to

debtors than having creditor's counsel appear at the scheduled sheriff's sale to postpone it.

Debtors cannot entirely escape judicial acts which do nothing to "carry[ ] forward" the non-

bankruptcy proceeding.  For example, under Billings' logic, a creditor violates the automatic stay

when a non-bankruptcy court orders parties to file periodic status reports to keep the court

informed.  Such a result does not promote the aim of the automatic stay.  If we  accepted

Billings' arguments, we would turn the shield of the automatic stay into a sword.  We will not do

so.

In asking us to find Portnoff violated the automatic stay, Billings urge us to "consider the

underlying purpose of the automatic stay which is to stop non-bankruptcy litigation of any kind

so the debtor may marshal their resources for a successful reorganization or rehabilitation in Bankruptcy Court."[43]   We did consider the purpose and find continuing the sheriff's sale furthered this purpose, whether done orally or through a boilerplate motion.

## III.  Conclusion

We affirm the bankruptcy court's dismissal of the adversary complaint.  Portnoff filed motions to continue to maintain the *status quo* in the foreclosure proceeding in accord with state law under the 1999 precedent in *Taylor*.  Billings do not claim the Township gained advantage by filing a motion as opposed to orally postponing the sale and Billings do not allege prejudice. Regardless of the costs attendant to an oral or written motion to postpone, the continuance motions sought to maintain the *status quo*.  As such, the motion cannot violate § 362's automatic stay and we affirm Chief Judge Frank's well-reasoned dismissal in the accompanying Order.

---

[1]The automatic stay provision grants debtors protection by staying judicial actions and proceedings against the debtors.   The provision stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]"  11 U.S.C. § 362(a)(1).

[2] A debtor may recover for a violation of the automatic stay.  Section 362 provides:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1).

[3] *In re Billings*, 544 B.R. 529, 536-37 (Bankr. E.D. Pa. 2016).

[4] *Id.* at 535-36.

[5] (ECF Doc. No. 4, at 6-13)

7

[6] We have jurisdiction to review final orders from the Bankruptcy Court under 28 U.S.C. § 158(a). On appeal, we "review[s] questions of law de novo, findings of fact for clear error, and exercises of discretion for abuse thereof." *In re Jevic Holding Corp.*, 787 F.3d 173, 179 (3d Cir. 2015). When dealing with issues of mixed law and fact, we must "accept the [Bankruptcy Court's] finding of historical or narrative facts unless clearly erroneous, but exercise 'plenary review of the [Bankruptcy Court's] choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981)).

The 12(b)(6) standard applies to bankruptcy proceedings Fed. R. Bankr. P. 7012. A motion to dismiss under Rule 12(b)(6) examines the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To survive a motion to dismiss under Rule 12(b)(6) a plaintiff must allege facts which   " 'raise a right to relief above the speculative level.' " *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  We must "accept all the factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp.*, 643 F.3d 77, 84 (3d Cir. 2011) (alteration in original) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

[7] 178 F.3d 698 (3d Cir. 1999). *In re Billings*, 544 B.R. at 537 ("[The *Taylor*] holding is binding on this Court and applies to the facts set forth in the Debtor's adversary complaint.")

[8] 178 F.3d at 700-01.

[9] *Id.* at 701.

[10] *Id.* Rule 3129.3 governs what notice need be provided after a sheriff's sale is "stayed, continued, postponed or adjourned." Normally, when a sale is stayed, continued, postponed, or adjourned, the creditor must provide new notice. Pa. R. Civ. P. 3129.3(a). The Rule provides two exceptions. Rule 3129.3(b) provides the first exception:

> If the sale is stayed, continued, postponed or adjourned to a date certain within one hundred thirty days of the scheduled sale, notice of which sale was given as provided by Rule 3129.2, and public announcement thereof, including the new date, is made to the bidders assembled at the time and place fixed for the sale, no new notice as provided by Rule 3129.2 shall be required, but there may be only two such stays, continuances, postponements or adjournments within the one hundred thirty day period without new notice.

The second exception is provided by 3129.3(a) and requires "special order of court." Pa. R. Civ. P. 3129.3(a). The Rule does not require the stay, continuance, postponement, or adjournment be obtained in any particular way. Rather, it only dictates when new notice need be given in the event of such an occurrence.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 702.

[14] *Id.*

[15] *Id.*at 701.

[16] *Id.* at 702.

[17] *Id.*

[18] *Id.*

[19] *In re Billings*, 544 B.R. at 535-37.

[20] *Id.* at 536.

[21] *Id.* at 535-37.

[22] *Id.* at 535.

[23] *Id.* (citing *In re Angulo*, No. 09-389, 2010 WL 1727999, *12 n.10 (Bankr. E.D. Pa. Apr. 26, 2010)).

[24] 2010 WL 1727999, at *12 n.10.

[25] *In re Billings*, 544 B.R. at 536.

[26] 178 F.3d at 702 ("We must therefore decide whether a continuation of a sheriff's sale serves to maintain the status quo between the debtor and his creditors [.]")

[27] 178 F.3d at 701.

[28] *Taylor*, 178 F.3d at 702.

[29] 959 F.3d 1195, 1203 (3d Cir. 1994)

[30] (ECF Doc. No. 6, at 4)

[31] *Maritime*, 959 F.3d at 1207.

[32] *Taylor*, 178 F.3d at 702.

9

[33] *Maritime*, 959 F.3d at 1207.

[34] *Id.*

[35] 959 F.3d at 1206 ("Once triggered by a debtor's bankruptcy petition, the automatic stay suspends any non-bankruptcy court's authority to *continue* judicial proceedings then pending against the debtor.") (emphasis added).

[36] *In re Billings*, 544 B.R. at 536.

[37] *Id.*

[38] Pa. R. Civ. P. 3129.3(b)(2).

[39] Billings do not claim costs in contesting Portnoff's continuance motions. *In re Billings*, 544 B.R. at 536.

[40] *Taylor*, 178 F.3d at 702 (the continuation "permits the creditor to avoid duplicative foreclosure costs that would eventually be deducted from the proceeds of the sale (to the disadvantage of the debtor).").

[41] Billings cite *In re Townsville*, 268 B.R. 95 (Bankr. E.D. Pa. 2001) where the bankruptcy court observed the cost of re-noticing the sheriff's sale in the *Legal Intelligencer* added dollars to the foreclosure judgment against the debtor. *In re Townsville*, 268 B.R. at 125. The court theorized this could be a violation of the automatic stay because these costs altered the *status quo*. *Id.* Yet, as the Billings concede, the bankruptcy court's observation is dicta in a non-binding opinion and we need not adhere to the rationale. We find *Townsville* to be unpersuasive.

[42] (ECF Doc. No. 6, at 5)

[43] (ECF Doc. No. 6, at 10)